**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT PIKEVILLE**

**CIVIL ACTION NO. 22-40-DLB**

**IRMAL THORNSBERRY, JR.** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

* * * * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on Plaintiff Irmal Thornsberry's Motion for Summary Judgment (Doc. # 11), filed pursuant to 42 U.S.C § 405(g), which allows Plaintiff to obtain judicial review of an administrative decision by the Social Security Administration. Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, has filed a Cross-Motion for Summary Judgment (Doc. # 13). The Court, having reviewed the administrative record and the parties' motions, and for the reasons stated herein, **affirms** the Commissioner's decision as supported by substantial evidence. Accordingly, Thornsberry's Motion for Summary Judgment (Doc. # 11) is **denied**, and the Commissioner's Motion for Summary Judgment (Doc. # 13) is **granted**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Irmal Thornsberry is a 45-year-old resident of Partridge, Kentucky. (Tr. 394). Thornsberry filed an application for Disability Insurance Benefits ("DIB") with the Social Security Administration in February 2019. (Tr. 394). In his application, Thornsberry

alleged disability beginning in August 2018, based on coronary artery disease, hemochromatosis, gout, myopathy, neuropathy, carpal tunnel, tremors, anxiety and depression, muscle weakness, muscle and joint pain, and elevated creatinine kinase. (Tr. 394-95, 432). Thornsberry's application for benefits was initially denied in May 2019 (Tr. 278) and was denied again on reconsideration that June. (Tr. 283). Thornsberry requested a hearing before an Administrative Law Judge ("ALJ") shortly thereafter (Tr. 290), and a telephonic hearing was held before ALJ Greg Holsclaw in March 2020. (Tr. 307). ALJ Holsclaw issued an unfavorable decision to Thornsberry in April 2020, finding that he was not disabled as defined by the Social Security Act. (Tr. 247). Thornsberry then appealed the ALJ's decision to the SSA Appeals Council (Tr. 344), which remanded the case to the ALJ with instructions to articulate his findings more fully regarding Thornsberry's mental impairments and limitations. (Tr. 349). ALJ Holsclaw held a hearing in March 2021 (Tr. 114-59), and then issued a new decision, again finding Thornsberry not disabled. (Tr. 91). Thornsberry again appealed, and this time the Appeals Council denied his appeal. (Tr. 1). He then filed this action, seeking judicial review of the Commissioner's decision. (*See* Doc. # 1).

## III. ANALYSIS

### A. Standard of Review

Judicial review of the Social Security Commissioner's decision is restricted to determining whether the decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision if it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole." *Cutlip*, 25 F.3d at 286.

**B. The ALJ's Determination**

To determine disability, an ALJ conducts a five-step analysis. *Walters*, 127 F.3d at 529. Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments. Before proceeding to Step Four, the ALJ determines the claimant's residual functional capacity ("RFC") based on the medical evidence in the record. Then, the ALJ considers Step Four, whether the claimant can still perform his

past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform. *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity." *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, the ALJ determined at Step One that Thornsberry had not engaged in substantial gainful activity since the alleged onset date of his disability on August 21, 2018. (Tr. 94). At Step Two, the ALJ found that Thornsberry's spinal degeneration and compression fractures, obesity, coronary artery disease, carpal tunnel syndrome, hemochromatosis, pneumoconiosis, depression, and anxiety all qualified as severe impairments. (Tr. 95). The ALJ concluded at Step Three that Thornsberry's severe impairments did not meet or medically equal the severity of one of the listed impairments in the Social Security Act, so the analysis proceeded to Step Four. (Tr. 95). Before completing the fourth step, the ALJ determined that Thornsberry had "the residual functional capacity to perform light work" with a few "exertional and non-exertional limitations." (Tr. 97). At Step Four, the ALJ found that Thornsberry was unable to perform his past relevant work "as a conveyor belt maintenance mechanic, as a power shovel operator, as a continuous mining machine operator, as a miner, and as a tank truck driver." (Tr. 106). Finally, at Step Five, the ALJ concluded that given Thornsberry's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform. (*Id.*). The ALJ pointed to a vocational

expert's testimony that Thornsberry could work as a garment sorter, routing clerk, or folding machine operator. (Tr. 107). Because those jobs could be performed within Thornsberry's RFC, the ALJ concluded that he was not disabled within the definitions of the Social Security Act. (*Id.*).

On appeal to this Court, Thornsberry argues that the ALJ's finding concerning serious impairments and residual functional capacity were not supported by substantial evidence because (1) he failed to discuss Thornsberry's severe impairments more fulsomely as required by the Appeals Council, and (2) he failed to explain why he discounted many of Dr. Dye's medical opinions. (Doc. # 11-1 at 10-11). After reviewing the filings made by Thornsberry and the Commissioner, the Court finds that Thornsberry's arguments do not warrant reversal of the Commissioner's decision, and the decision is therefore **affirmed**.

### C. The Cross-Motions for Summary Judgment

As previously stated, "substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. The Court cannot weigh the evidence or re-litigate the case, but only examines the sufficiency of the evidence, even if the Court may have decided the case in a different manner. *See Her*, 203 F.3d at 389-90. If the ALJ's decision is supported by substantial evidence, the Court must affirm the decision. *Cutlip*, 25 F.3d at 286.

Both of Thornsberry's arguments center around the Commissioner's decision that his impairments show he has an RFC allowing "light work." (Doc. # 11-1 at 9-13). Specifically, he first argues that the ALJ failed to follow the instructions of the Appeals

Council and more fully discuss his findings regarding Thornsberry's mental and hearing disabilities. (*Id.*). Second, he argues that the ALJ should have given more weight to Dr. Dye's opinions, which were much more favorable to Thornsberry's claim. (*Id.*).

The Social Security regulations provide that an ALJ must determine a claimant's RFC, which "is defined as the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 405 (6th Cir. 2018) (internal quotations omitted). The regulations require that an ALJ assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). With specific respect to medical evidence, an ALJ must evaluate the persuasiveness of medical opinions considering certain factors, including supportability, consistency, relationship with the claimant, specialization, and other factors, including familiarity with the other evidence involved in a claim. 20 C.F.R. § 404.1520c(e)(1)-(5). Of these factors, the regulations provide that supportability and consistency are the "most important," and they further require that an ALJ explain how he or she considered supportability and consistency in assigning weight to a medical opinion, while explanation of the other factors is optional. *Id.* at (b)(2). Supportability is defined as "the objective medical evidence and supporting explanations provided by a medical source [] to support his or her medical opinion(s)," *id.* at (c)(1), and consistency is defined as how "consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* at (c)(2).

With that standard laid out, the Court will evaluate each of Mr. Thornsberry's arguments in turn.

### *1. The ALJ's findings regarding serious impairments*

Thornsberry argues that ALJ Holsclaw failed to sufficiently articulate his findings[1] regarding Thornsberry's mental disability and should have found his hearing impairment to be severe.[2] (Doc. # 11-1 at 9-10). Again, this Court does not evaluate the evidence to reach its own conclusion on the merits of Thornsberry's claims, but simply evaluates the ALJ's decision to see if the medical evidence, fairly read, could support the decision.

With respect to the ALJ's finding that Thornsberry's mental disability is unsupported by substantial evidence, Thornsberry presents very little in the way of argument. Instead, he repeats the law of substantial evidence review, recapitulates the five-step process the ALJ used to evaluate the claim, and then transitions into his next argument about Dr. Dye's testimony. (Doc. # 11-1 at 10-11). The Commissioner's brief fills in the gap, convincingly showing that the ALJ sufficiently articulated the basis for his decision regarding Thornsberry's mental impairments. (*See* Doc. # 13 at 9-10).

On remand from the Appeals Council, ALJ Holsclaw reached the same conclusion as before regarding Thornsberry's mental impairments, but provided sufficient exposition as to why he reached this decision. (*Id.*). First, he stated his conclusion and that he considered "paragraph B" in his decision. (Tr. 96). To find a severe impairment, he had to find "one extreme limitation or two marked limitations." (*Id.*). While he found a number

---

1 Thornsberry repeatedly complains that the ALJ failed to heed the admonitions of the Appeals Council when considering his claim on remand. The Court simply notes that it is not the job of this Court to police the interactions between the Appeals Council and the ALJ, and that the Appeals Council turned down a chance to make Thornsberry's point when it refused to consider the decision here. The task for this Court is to apply the principles of substantial evidence review.

2 Thornsberry also argues that the ALJ entirely failed to evaluate his arthritis. But Thornsberry did not list arthritis among his limiting medical conditions on his initial application for benefits. (Tr. 432). Thus, it was not discussed.

of moderate limitations, none of the limitations achieved that standard of "severe" or "marked." (*Id.*). Specifically, he found that Thornsberry suffered under a moderate limitation with regard to understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and self-management. (*Id.*). He noted that the evidence did not support a conclusion of a more extreme limitation because Thornsberry never received or required advanced treatment, never suffered ongoing problems with such symptoms, and all his relevant medical visits supported a conclusion that "the claimant retains significant abilities." (*Id.*).

The ALJ also considered the "paragraph C" criteria and found they did not support a finding of severe impairment. (*Id.*). This standard requires a finding of a "serious and persistent" limitation, which means it occurred over a period of at least two years with medical treatment. (Tr. 96-97). He similarly found these lacking. The ALJ then moved to consider Thornsberry's mental impairment under the RFC assessment used at steps four and five.[3] (Tr. 97).

Here, the ALJ concluded that Thornsberry's RFC would allow him to perform "light work" despite a number of impairments noted in the record. He detailed Thornsberry's difficulty being in the company of more than ten people at one time, his trouble breathing due to his anxiety, and his depression. (Tr. 98). He specifically discussed the medical evidence later in the decision and his grounds for finding that "the claimant's treatment records, and the findings of the consultative examination support no more than moderate limitations due to mental health impairments." (Tr. 103). As justification he noted that

---

[3] ALJ Holsclaw discussed Thornsberry's mental impairments in two contexts: the severity assessment of steps 2 and 3, and the RFC assessment of steps 4 and 5. It is not clear from Thornsberry's briefing which he takes issue with, so the Court will evaluate both.

Thornsberry "has not required or received advanced mental health treatment, such as psychiatric hospitalization or crisis stabilization," nor has he shown anything other than "normal behavioral characteristics." (*Id.*). He points to specific physicians and their records, including Dr. Dye's note that "the claimant was oriented to time, place, person, and situation . . . [and] exhibited appropriate mood and affect." (*Id.*). He also addresses Dr. Rigby's treatment, which noted symptoms such as "low energy, episodes of spontaneous crying, panic attacks twice per month, and lack of desire to be around others." (*Id.*). Yet despite these symptoms, "Dr. Rigby noted many characteristics that were within normal expectations," such as the fact that Thornsberry "was fully alert and oriented . . . [and] displayed intact attention and concentration" with "thought processes . . . free of psychotic symptoms, and his speech was normal and logical." (*Id.*). Based on this, the ALJ reasonably concluded that, taken in its entirety, the medical evidence showed that Thornsberry's mental impairments did not rise to the level of being "severe."

Thornsberry also took issue with the ALJ's decision that his hearing impairments did not rise to the level of a severe impairment. (Doc. # 11-1 at 9). As mentioned before, this Court does not re-evaluate the evidence presented to the ALJ or come to its own conclusions on believability or Thornsberry's disability. Therefore, this Court can only look at the ALJ's decision and decide if the conclusions therein are sufficiently supported by the evidence.

Here, it is clear that the records support a conclusion that Thornsberry's hearing loss did not constitute a severe impairment. The ALJ concluded that "hearing loss, considered both individually and in combination, does not impose more than a slight or minimal limitation in [sic] the claimant's ability to perform basic work-related activities on

a sustained basis and are [sic] not 'severe' within the meaning of the Social Security Act." (Tr. 95). As justification, he stated that tests run by audiologist Kara Kratzer showed normal hearing in both ears, despite noting that Thornberry had some subcortical damage that could be a precursor to hearing loss, and that he reported tinnitus in his right hear. (*Id.*). Dr. Samir Guindi considered Thornsberry a good candidate for a hearing aid, but his records show no significant hearing problems. (*Id.*). Even after that visit. Dr. Casey Rutledge "noted that comprehensive audiometry showed normal hearing acuity bilaterally within the exception of a slight loss at 4000 Hz in the right ear." (*Id.*). Thornsberry "demonstrated 100 percent word recognition . . . normal middle ear status . . . [and] moderate levels of tinnitus." (*Id.*). Dr. Rutledge noted that "hearing devices might benefit" Thornsberry, but based this completely on his self-reported tinnitus. (*Id.*). The ALJ concluded that "while the claimant reported tinnitus, his complaints were considered to be subjective, and the objective evidence did not support significant hearing problems." (*Id.*). There was simply no objective evidence of severe hearing loss.

On both these arguments, the ALJ provided more than enough discussion of the evidence to show that his conclusions were based on substantial evidence. As the Commissioner points out, "the ALJ provided extensive discussion of his findings regarding Plaintiff's work-related mental limitations on remand." (Doc. # 13 at 10). Against this, we have a single sentence in Thornsberry's Motion for Summary Judgment stating that the ALJ "[s]pecifically found the Claimant did not have a severe impairment in regard to his hearing and did not address his arthritis." (Doc. # 11-1 at 9). Given the ALJ's thorough discussion of the medical records and Thornsberry's lack of argument as to what evidence the ALJ failed to consider on the issues of hearing loss, the Court will not disturb

the ALJ's decision.

### *2. The ALJ's treatment of Dr. Dye's opinions*

Second, Mr. Thornsberry argues that the ALJ failed to give sufficient weight to Dr. Dye's medical testimony. As discussed above, the ALJ is required to explain how the medical opinions in question are supported by and consistent with the evidence as a whole. 20 C.F.R. § 404.1520c(b)(2). Thornsberry argues that the ALJ repeated his mistake from the first decision, which was rebuked by the Appeals Council and remanded, by failing to consider that Dr. Dye's "opinion should have been given more weight given the longevity of his treatment and the fact that his recommendations are supported by objective medical evidence in the record." (Doc. # 11-1 at 11).

Thornsberry is asking this Court to impermissibly re-weigh the evidence by stepping into the shoes of the ALJ and determining that Dr. Dye's testimony should be given greater weight. Not only would that be improper, but it would also be against the weight of the evidence. The ALJ "considered Dr. Dye's opinion at length, finding it not persuasive." (Doc. # 13 at 11). In making that finding, he noted at the outset that Dr. Dye attempted to camouflage a legal conclusion as a medical statement. (Tr. 104, 946). By stating that Thornsberry was "legitimately disabled from gainful employment," Dr. Dye stepped outside his role as a doctor presenting a medical opinion and attempted to secure Thornsberry's desired result for him by suggesting a dispositive legal conclusion. This is not at all unlike a fact witness at trial attempting to testify as to the ultimate issue—the guilt or innocence of the party.

Additionally, Dr. Dye's legitimate medical opinions were not consistent with the weight of the evidence. (Tr. 104). The ALJ noted that Dr. Dye's opinions that Thornsberry

could not lift more than 20 pounds or walk and stand more than two hours per day were "not supported by the medical evidence." (Tr. 104). And why? Because "the claimant generally demonstrated normal strength, or at worst, 4/5 strength in his extremities. With this strength, the claimant would be expected to lift 20 pounds." (*Id.*). Additionally, the evidence from other doctors showed that Thornsberry did not suffer the "advanced degenerative changes" in his spine, "such as nerve root compression, that would be expected to cause greater exertional limitations." (*Id.*). And finally, the evidence from other doctors—and even Dr. Dye—with regards to his walking ability showed that he "demonstrated normal gait, station, and balance." (Tr. 99). As the Commissioner pointed out, "both state agency doctors found that Plaintiff could perform a range of light work, including standing and walking six hours total per workday." (Doc. # 13 at 11).

Thornsberry generically states that the ALJ "should have made a more specific determination as to why he disregarded Dr. Dye's opinions." (Doc. # 11-1 at 11). But the ALJ's explanation is specific enough, and in light Thornsberry's lack of an appropriate argument, it becomes clear that the ALJ's decision was based on substantial evidence. And both supportability and consistency are addressed. The ALJ relies on Dr. Dye's medical findings in other areas of his decision, yet rejects his ultimate opinions as unpersuasive, showing that Dr. Dye's opinions are not supported by his own observations. (Tr. 96, 99-103). And as outlined above, Dr. Dye's ultimate opinion on Thornsberry's condition is clearly inconsistent with the opinion and medical examinations of the other physicians—in other words, inconsistent with the record as a whole. The standard is therefore satisfied, and the ALJ's decision is supported by substantial evidence. The Court's analysis stops there, as the Court cannot reweigh the evidence

and make its own credibility determinations. *Her*, 203 F.3d at 389-90; *see also Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 847-48 (N.D. Ohio 2022) (finding substantial evidence supporting a credibility determination where ALJ provided reasons for her determination).

## IV. CONCLUSION

In summary, the Court again notes that in reviewing the decision of an ALJ, the Court cannot re-litigate a case, and it cannot re-weigh the evidence. *Her*, 203 F.3d at 389-90. Even when the Court may have decided a case differently, the Court must affirm the ALJ's decision if it is supported by substantial evidence. *Cutlip*, 25 F.3d at 286. In this case, for the reasons stated herein, the ALJ's decision is supported by an ample amount of substantial evidence, and thus it will be **affirmed**.

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 11) is **DENIED**;

(2) Defendant's Motion for Summary Judgment (Doc. # 13) is **GRANTED**;

(3) This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(4) A corresponding Judgment shall be entered herewith.

This 20th day of July, 2023.




**Signed By:**
***David L. Bunning*** DB
**United States District Judge**